**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00669-RSE**

**MICHAEL G.**                                                                                    **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security*                                          **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

The Commissioner of Social Security denied Claimant Michael G.'s ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Fact and Law Summary and Brief. (DN 14; DN 15). The Commissioner filed a responsive Fact and Law Summary (DN 16). And Plaintiff filed a Reply brief. (DN 17).

The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10; DN 11).

I.    Background

Michael G. ("Claimant") applied for disability insurance benefits under Title II of the Social Security Act on April 3, 2024, alleging disability beginning on September 22, 2023. (Transcript, hereinafter, "Tr." 167-73). He alleged disability based on the following impairments: panic disorder, anxiety, irritable bowel syndrome, ankle injury, restless legs, flat feet, high blood pressure, high cholesterol, degenerative disc disease, and GERD. (Tr. 216). Claimant's application

1

was denied at the initial review level on June 14, 2024 (Tr. 99-102) and again at the reconsideration review level on August 5, 2024 (Tr. 105-07).

At Claimant's request (Tr. 110-11), Administrative Law Judge Susan Brock conducted a remote administrative hearing on December 4, 2024. (Tr. 42-72). Claimant appeared by phone with his attorney. (*Id.*). An impartial vocational expert also participated. (*Id.*). Claimant provided the following relevant testimony during his hearing.

Claimant lives with his wife and three children and is able to drive a car. (Tr. 48). He last worked in September of 2023 as a training specialist for the Army. (Tr. 48-50). He is retired from the military and receives 100% Veterans Affairs disability, 70% of which is for neurosis, generalized anxiety disorder. (Tr. 49, 63). According to Claimant, he cannot sustain full-time work due to the combination of his irritable bowel syndrome (IBS) and anxiety. (Tr. 46-47, 51). Had he worked for another year and eight months, he could have earned Department of Army civilian retirement with "great financial benefit." (Tr. 64-65).

His IBS began several years ago and causes gas, frequent bathroom trips, and knots/bubbles in his stomach. (Tr. 52-53). When he was teaching, he would need to take bathroom breaks at least six times a day. (Tr. 54-55). He has only talked to one or two doctors about these issues because he is embarrassed. (Tr. 56).

His anxiety started around 2010. (Tr. 51). He reports having a racing heart and suffering crippling panic attacks. (Tr. 51). He has visited the emergency room several times with these symptoms. (Tr. 61-62). Since he quit working and started medication, his panic attacks have improved. (Tr. 56-57). The medication, however, can give him a "foggy brain" and he does not feel as mentally sharp as he used to. (Tr. 57). Claimant minimizes his time outside of the house to avoid big crowds and loud noises but attends some of his kids' school activities. (*Id.*). He

2

complains of difficulty with memory but notes he has a routine with taking his medicine in the morning and afternoon and has only missed one doctor's appointment when he put it in the calendar incorrectly. (Tr. 58). His stress levels are unpredictable; sometimes he reacts to big things calmly or gets "pretty stressed" about little things. (*Id.*).

Although he "lack[s] motivation to do anything meaningful," Claimant can help with household chores on good days and groom himself. (Tr. 59). His hobbies have also shifted. He used to love running, hiking, and archery. (Tr. 59-60). Now, he watches a lot of TV, tries to read, and listens to podcasts. (*Id.*). His former hobbies are too painful or "too much trouble now." (Tr. 60).

After considering Claimant's testimony and the medical records submitted, ALJ Brock issued an unfavorable decision on March 11, 2025. (Tr. 25-37). She applied the five-step sequential analysis for evaluating adult disability claims from 20 C.F.R. § 404.1520 and found as follows. First, Claimant has not engaged in substantial gainful activity since September 22, 2023, his alleged onset date. (Tr. 27). Second, Claimant has the following severe impairments: degenerative disc disease, osteoarthritis, post-traumatic stress disorder, anxiety, and panic attacks. (Tr. 28-29). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 29-31).

At Step Four, ALJ Brock found Claimant has the residual functional capacity to perform "medium work" as defined in 20 CFR 404.1567(c) but with the following limitations:

> [Claimant can] frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently stoop, kneel, crouch, and crawl; occasional exposure to unprotected heights; can understand, remember, and carry out simple and detailed instructions; can sustain concentration in two hour segments for simple and detailed tasks; can tolerate frequent interaction with co-workers, supervisors, and the general public; and can tolerate routine changes in the workplace.

(Tr. 31-35). Additionally at Step Four, ALJ Brock found Claimant cannot perform his past relevant work. (Tr. 35). Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Brock found there are jobs that exist in significant numbers in the national economy that Claimant can perform. (Tr. 36). ALJ Brock concluded that Claimant was not under a disability, as defined in the Social Security Act, from September 22, 2023, through the date of the decision. (Tr. 37).

Claimant administratively appealed ALJ Brock's denial (Tr. 161-62), but the Appeals Council declined review (Tr. 16-18). At that point, ALJ Brock's denial became the final decision of the Commissioner, and Claimant sought judicial review from this Court pursuant to § 405(g). (DN 1).

II.    Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an

inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).  The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

III.    <u>Analysis</u>

Claimant makes two challenges that involve ALJ Brock's Step Four RFC determination.

A.  ALJ Brock's incorporation of mental limitations from Step Three to Step Four

Claimant first alleges that ALJ Brock failed to incorporate two mental limitations she found at Step Three into her RFC analysis at Step Four. (DN 15, at PageID # 816-22). At Step Three, in analyzing whether Claimant's mental impairments met or equaled a listed impairment, ALJ Brock considered the four broad functional areas known as the "Paragraph B" criteria. For two of these functional areas, understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, ALJ Brock found Claimant had "mild limitation." (Tr. 30). For the remaining two functional areas, interacting with others and adapting or managing oneself, ALJ Brock determined Claimant had "moderate limitation." (*Id.*). As to Claimant's "moderate limitation" in interacting with others, ALJ Brock discussed Claimant's allegations of not getting along with others and his episodes of being irritable but also noted Claimant's use of breathing techniques and positive self-talk, as well as his cooperative and normal behavior at exams. (*Id.*).

5

As to Claimant's "moderate limitation" in adapting and managing himself, ALJ Brock discussed Claimant's reports of anxiety, depression, intrusive memories, difficulty sleeping, and panic attacks. (*Id.*). Despite these reports, ALJ Brock considered Claimant repeatedly appearing in no acute distress, having normal mood and affect, driving a car, shopping in stores, using a computer, and having normal insight and judgment. (*Id.*).

Then, in the RFC, ALJ Brock considered Claimant's subjective function reports and testimony, the objective medical records, and the medical opinions of record and added four mental limitations: that Claimant could (1) understand, remember, and carry out simple and detailed instructions; (2) sustain concentration in two-hour segments for simple and detailed tasks; (3) tolerate frequent interaction with co-workers, supervisors, and the public; and (4) tolerate routine changes in the workplace. (Tr. 31).

Claimant does not dispute ALJ Brock's "Paragraph B" conclusions at Step Three to the extent that Claimant cannot meet the requirements of a listed impairment. (DN 15, at PageID # 817). But he argues that some limitations in ALJ Brock's RFC are inconsistent with her findings at Step Three and that ALJ Brock failed to provide a reasonable explanation for the inconsistencies. (*Id.*, at PageID # 817). Specifically, Claimant urges that ALJ Brock's Step Three finding that Claimant was moderately limited in interacting with others is inconsistent with her RFC restriction that he can tolerate frequent interaction with co-workers, supervisors, and the public. Likewise, Claimant insists ALJ Brock's Step Three finding that Claimant was moderately limited in adapting and managing himself is inconsistent with her RFC limitation that Claimant can tolerate routine changes in the workplace. (*Id.* at PageID # 818). These "slight" RFC restrictions, according to Claimant, would only make sense if ALJ Brock had found he was *mildly* limited in those domains at Step Three. (*Id.*).

6

The Commissioner responds that no error results from the alleged "inconsistency" because ALJs evaluate "moderate limitations" on a case-by-case basis. (DN 16, at PageID # 834 (citing *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005))). As to the RFC restriction that Claimant can tolerate frequent interaction with co-workers, supervisors, and the public, the Commissioner says Claimant has pointed to no evidence showing greater limitation is warranted. (*Id.*). And although Claimant points to his hearing testimony regarding his alleged social difficulties, the Commissioner emphasizes that he makes no challenge to ALJ Brock's evaluation of his subjective complaints in the RFC. (*Id.*). The Commissioner concludes that since ALJs are not required to accept a claimant's subjective complaints as support for a more restrictive RFC, the ALJ's decision should be affirmed.

In reply, Claimant clarifies that an ALJ assessing evidence on a case-by-case basis does not give them license "to make illogical RFC findings that do not correspond to the rest of [the] decision." (DN 17, at PageID # 841).

Nothing in the regulations requires an ALJ to adopt verbatim their Step Three limitations in the subsequent RFC assessment. *Travis T. v. Bisignano*, No. 3:25-CV-00138-RSE, 2025 WL 3281431, at *4 (W.D. Ky. Nov. 25, 2025). That is because Step Three and the RFC serve different functions. Step Three regulates a "narrow category of adjudicatory conduct." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006) (en banc). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* The RFC is a subsequent determination distinct from Step Three. *See Turbeville v. Colvin*, No. 1:12-CV-00061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step 3 and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step."). The RFC "requires a more detailed assessment by itemizing

7

the various functions contained in the broad categories found in Paragraphs B and C." SSR 96-8p, 1996 WL 374184, at *4. ALJ Brock's decision recognized this distinction, noting that her assessment of the Paragraph B criteria at Step Three was "not a residual functional capacity assessment" and that "the mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." (Tr. 31).

It follows that an ALJ's determination that a claimant has moderate limitations in the Paragraph B criteria at Step Three does not necessarily correlate to identical limitations in the RFC. *Travis T.*, 2025 WL 3281431, at *4 (citing *Thorpe v. Comm'r of Soc. Sec.,* No. 4:23-CV-2-CEA-DCP, 2023 WL 8705497, at *9 (E.D. Tenn. Nov. 20, 2023) ("[T]he ALJ is not required to provide specific RFC accommodations for limitations in the paragraph B criteria."); *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (finding that "the ALJ does not have to include paragraph B finding in his RFC finding" and concluding that "the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five")).

ALJ Brock was not required to incorporate her "moderate" Paragraph B limitations as to Claimant's ability to interact with others and adapt and manage himself into the RFC. Instead, ALJ Brock was required to consider the effect of Claimant's moderate limitations in interacting with others and adapting and managing himself in the mental limitations adopted in the RFC. The Court finds she did.

8

ALJ Brock evaluated both subjective and objective evidence relating to Claimant's ability to interact with others and adapt and manage himself in the RFC. She discussed Claimant's function reports noting his irritability and difficulty with others and not wanting to be around people, as well as his hearing testimony that he "tries to avoid people." (Tr. 31-32). ALJ Brock further discussed Claimant's use of breathing techniques and positive self-talk, as well as using medication, which he reported was working well, and attending therapy. (Tr. 32-33). Moreover, ALJ Brock considered that Claimant appeared at medical visits with normal mood and affect, normal insight and judgment, and that "[d]espite his reported difficulties interacting with others, he was cooperative and had normal behavior." (Tr. 33). Considering Claimant's reported activities, ALJ Brock highlighted him being able to drive a car, shop in stores, use a computer, pay bills, and count change. (Tr. 33). After evaluating this evidence, ALJ Brock concluded: "[g]iven his reported mental health symptoms, his panic, the reported irritability and difficulty interacting with others, and the exported difficulties at the hearing, . . . [Claimant] can tolerate frequent interaction with co-workers, supervisors, and the general public; irritability/panic around others in public, and can tolerate routine changes in the workplace." (Tr. 33).

This analysis provides an accurate and logical roadmap between the evidence and ALJ Brock's conclusions. Recognizing Claimant had some limitation in interacting with others, she limited him to frequent interaction in the RFC but found greater limitations were not supported by the record. And recognizing that Claimant had some limitation in adapting and managing himself, ALJ Brock limited him to tolerating routine changes in the workplace in the RFC but found no greater limitation was supported by the record. These determinations are supported by substantial evidence, and the Court finds no error.

9

Claimant additionally alleges that ALJ Brock's Paragraph B analysis of his interactive difficulties ignores much of his testimony and inappropriately reasoned that his interactive limitations were not even more severe because he was cooperative and had normal behavior at most exams. (*Id.* at PageID # 819-20 (citing Tr. 30)). In response, the Commissioner states that Claimant has provided no authority that an ALJ cannot rely on a claimant's behavior at examinations as part of "all relevant evidence in the case record." (DN 16, at PageID # 834-35). Claimant replies that no logical connection exists between his ability to interact properly at brief and infrequent doctor's appointments and a moderately impaired capacity to interact frequently in a full-time work setting. (DN 17, at PageID # 842).

As previously stated, in considering Claimant's ability to interact with others at Step Three, ALJ Brock noted that Claimant alleged limitations with getting along with others and experienced episodes of being irritable. (Tr. 30). However, ALJ Brock also noted Claimant's ability to use breathing techniques and positive self-talk, as well as his cooperative and normal behavior at most exams.  (*Id.*). In weighing this evidence, ALJ Brock determined Claimant had moderate limitation in interacting with others. No error stems from this analysis. ALJ Brock did not solely discount evidence of Claimant's social impairment based on his appearance at medical exams, as Claimant would have us believe. Instead, ALJ Brock considered evidence that both supported and undermined his level of limitation to reach his conclusion.

Nor does the Court find ALJ Brock prejudicially ignored Claimant's testimony regarding his interaction with others. It is well established that ALJs "need not discuss every piece of evidence in the record for the [ALJ's] decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004); *see also Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written

10

decision every piece of evidence submitted by a party."). And looking beyond Step Three, ALJ Brock thoroughly considered Claimant's testimony in evaluating the RFC. *See Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 366 (6th Cir. 2014) (finding no error in Step Three analysis where ALJ "made sufficient factual findings elsewhere in the record to support his conclusion at step three.").

Lastly, Claimant argues ALJ Brock failed to consider how his IBS symptoms impacted his mental condition, specifically through his embarrassment and tendencies to self-isolate, which speak to his interactive difficulties. (DN 15, at PageID # 820). Because ALJs are required to consider both a Claimant's severe and non-severe impairments from Step Three in the RFC, Claimant argues ALJ Brock's failure to consider IBS in the RFC constitutes reversible error. (*Id.* at PageID # 820-21). The Commissioner counters that Claimant has cited no evidence to support his IBS exacerbating his ability to interact with others and does not identify any specific restriction that should have been included in the RFC. (DN 16, at PageID # 835).

Contrary to Claimant's position, ALJ Brock considered both subjective and objective evidence of Claimant's IBS in the RFC assessment. She noted Claimant's testimony regarding his IBS "kick[ing] in" and resulting in long bathroom breaks, embarrassment over whether he had an odor, needing special wipes, and suppositories. (Tr. 32). ALJ Brock later indicated that despite Claimant's reported difficulties of using the restroom frequently, "the record does not show any specialist care or even discussion of it in the records." (Tr. 33). ALJ Brock also noted that Claimant reported having no gastrointestinal issues at several exams. (*Id.* (citing Ex 4F, pp. 90, 105, 102, 138)). ALJ Brock, therefore, discussed the evidence relating to Claimant's IBS, or lack thereof, and appropriately considered both his severe and non-severe impairments in the RFC. Likewise,

11

Claimant fails to cite any evidence or demonstrate how additional consideration of his IBS requires further limitation on his ability to interact in the workplace in the RFC. No error results.

    B. ALJ Brock's evaluation of State agency psychologist Dr. Sinkhorn's administrative findings

Next, Claimant asserts ALJ Brock failed to properly articulate her assessment of State agency psychologist Dr. Sinkhorn's prior administrative findings. (DN 15, at PageID # 822-29). Claimant argues it was error for ALJ Brock to find Dr. Sinkhorn's assessment to be "partially persuasive," but then fail to adopt the limitations Dr. Sinkhorn assessed in the RFC. (*Id.*).

In formulating a claimant's RFC, the ALJ must evaluate the persuasiveness of the medical opinions in the record. 20 C.F.R. §§ 404.1520c, 404.1529(a). The regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion. *Id.* ALJs instead evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. § 404.1520c(c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* at (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination, which is known as the "articulation requirement." *Id.* at (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* at (c)(2). To further illuminate this distinction, "supportability" relates to the objective

medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

The Sixth Circuit has not defined a specific standard to determine whether an ALJ sufficiently complied with the "articulation requirement." However, courts in this Circuit have applied the requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. Aug. 13, 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation.") (emphasis in original); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Dr. Sinkhorn assessed the evidence at the Agency's initial stage of review and submitted findings on May 11, 2024. (Tr. 76-77, 79-81). As to social interaction limitations, Dr. Sinkhorn opined that Claimant was "moderately limited" in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(Tr. 80). As to Claimant's ability to sustain concentration and persistence, Dr. Sinkhorn determined Claimant had no significant limitations except that he was "moderately limited [in] the ability to work in connection with or in proximity to others without being distracted by them." (*Id.*). Based on these findings, Dr. Sinkhorn concluded, in relevant part, that Claimant is able to: "[u]nderstand and remember simple and detailed instructions;" and "tolerate occasional (not more than 1/3 of the time) contact with coworkers, supervisors, and the public[.]" (Tr. 80-81).

At Step Four, ALJ Brock evaluated Dr. Sinkhorn's opinion and found it to be "partially persuasive." (Tr. 34). Broadly, ALJ Brock explained that Dr. Sinkhorn "has program knowledge and cites to the record in support." (*Id.*). More specifically, ALJ Brock found Dr. Sinkhorn's limitation to simple and detailed instructions was consistent with the evidence because Claimant had normal memory and concentration on exam. (*Id.* (citing Exs 4F, pp. 37, 51, 62; 9F, at p. 34)). But ALJ Brock assessed Dr. Sinkhorn's limitation to occasional interaction as inconsistent with the evidence since "at most exams [Claimant] was cooperative and had normal behavior." (*Id.* (citing Exs. 1F, at pp. 10, 13; 4F, at pp.34-35; 11F, at p. 10)). ALJ Brock concluded "the evidence is more consistent with a frequent limitation regarding interacting with others." (*Id.*).

Claimant argues that ALJ Brock's "cursory" analysis fails to meet the regulatory articulation standard because she did not evaluate Dr. Sinkhorn's opinion based on the evidence presented by Dr. Sinkhorn. (DN 15, at PageID # 824-25). Claimant again takes issue with ALJ Brock using Claimant's normal behavior at exams to discount Dr. Sinkhorn's limitation of occasional interaction, stating that ALJ Brock's simply pointing to a few instances of Claimant not causing a scene or losing control at a medical visit is not a sufficient assessment of consistency. (*Id.* at PageID # 825). According to Claimant, ALJ Brock disregarded medical evidence from Dr. Sinkhorn and relied on her own lay opinion to discount Dr. Sinkhorn's occasional-interaction

14

limitation. (*Id.* at PageID # 826). Because there is "no evidence within the written decision to support a finding that [ALJ Brock] met the supportability/consistency articulation standard with respect to Dr. Sinkhorn's prior findings," Claimant concludes remand is required. (*Id.* at PageID # 826-29).

The Commissioner responds that ALJ Brock clearly assessed the supportability of Dr. Sinkhorn's findings by concluding Dr. Sinkhorn cited evidence to support her findings. (DN 16, at PageID # 837). The Commissioner likewise concludes ALJ Brock's consistency analysis was appropriate, and no error resulted from her consideration of Claimant's normal behavior at exams. (*Id.*). Nor did ALJ Brock make lay opinions in evaluating Dr. Sinkhorn's assessment, according to the Commissioner, because ALJ Brock did not improperly interpret raw medical data in finding that Claimant's normal behavior at exams was inconsistent with a limitation to occasional interaction. (*Id.* at PageID # 837-38).

Claimant's reply reiterates that ALJ Brock's single-sentence regarding Dr. Sinkhorn's review of the record does not constitute an appropriate supportability analysis because it does not reveal anything substantive regarding the persuasiveness of the opinion. (DN 17, at PageID # 843-44). Per Claimant, ALJ Brock performed a "competing review" of the evidence reviewed by Dr. Sinkhorn to ultimately determine her opinion trumped that of the State agency psychologist. (*Id.* at PageID # 845).

ALJ Brock properly evaluated Dr. Sinkhorn's assessment pursuant to the regulations. First, as to "supportability," the Court notes that opinions of state agency consultants are "uniquely situated" because these consultants do not examine claimants. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6-7 (W.D. Ky. Mar. 20, 2024) (quoting *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22cv-3652, 2023 WL 2623571, at *6-7 (S.D. Ohio Mar.

24, 2023)). Any failure by ALJ Brock to discuss the internal supportability of Dr. Sinkhorn's assessment came with good reason: Dr. Sinkhorn did not perform objective diagnostic testing and did not observe Claimant. Accordingly, ALJ Brock's discussion of the record evidence and notation that Dr. Sinkhorn cited the record in support can be understood to touch upon both supportability and consistency, as required by the regulations. *See Mary E. O. v. O'Malley*, No. 3:23-CV-00344-CRS, 2024 WL 3876477, at *7 (W.D. Ky. July 24, 2024).

The Court likewise finds ALJ Brock's consistency analysis was sufficient. She found Dr. Sinkhorn's assessment to be partially persuasive and then specified one restriction that was consistent with the evidence and another that was not. ALJ Brock cited evidence of Claimant's cooperation and normal behavior at medical exams to demonstrate inconsistency with Dr. Sinkhorn's limitation of occasional interaction. Because the regulations specify that an ALJ's consistency evaluation relates to the relationship of a medical source's opinion with other medical opinions and evidence, the Court finds ALJ Brock's analysis was both appropriate and sufficient. *See* 20 C.F.R. § 416.920c(c)(1)-(2). Such analysis allows the Court to trace ALJ Brock's path of reasoning. For these same reasons, ALJ Brock did not improperly "play doctor" or determine that her own opinion of Claimant's limitations trumped those opined by Dr. Sinkhorn. The Court, accordingly, finds no error.

IV.    Order

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.** This is a final and appealable Order and there is no just cause for delay.

Copies:        Counsel of Record

16